IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH DELACRUZ, ) | |
| ) | |
| Plaintiff, ) | Case No. CV05-157-N-EJL |
| ) | |
| vs. ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER** |
| MISSOURI RIVER DRUG TASK FORCE; ) | |
| KOOTENAI COUNTY SHERIFF'S ) | |
| DEPARTMENT; COEUR D'ALENE POLICE ) | |
| DEPT.;FEDERAL BUREAU OF PRISONS; ) | |
| HARLEY G. LAPPIN, DIRECTOR; ) | |
| JOSEPH K. WOODRING, WARDEN ) | |
| ROCKEY WATSON, SHERIFF; A. EGAN, ) | |
| JTO; DAN DIXON, SGT; A. HUNT, ) | |
| DETECTIVE; CHAD GUNLINSON, ) | |
| DETECTIVE; TIM HANNA, DEPUTY; ) | |
| KENNETH HAMLEY, DEPUTY; P. HAST, ) | |
| DEPUTY; D. ARNDS, DEPUTY; J.M. ) | |
| YOUNG, DEPUTY; J.L. BRAINARD, ) | |
| OFFICER; DAVID PETERSON, OFFICER; ) | |
| MICHAEL SAINDON, OFFICER; GERALD ) | |
| STEM, TROOPER; E.G. CASTRO, M.D.; ) | |
| J. CORNEJO, PA.; ONE UNKNOWN ) | |
| JOINT AGENCY TASK FORCE PROJECT ) | |
| DIRECTOR; ONE UNKNOWN JOINT ) | |
| AGENCY TASK FORCE SUPERVISOR; ) | |
| ONE UNKNOWN FBI AGENT; ONE ) | |
| UNKNOWN DEA AGENT; THOMAS ) | |
| CRONIN, CHIEF OF POLICE; DOES 1-5; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM DECISION AND ORDER  1**

Pending before the Court are various motions filed by the parties. Having reviewed the motions and responses, as well as the record in this case, the Court enters the following Order.

## KOOTENAI COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 41)

The Court previously conditionally granted the Motion for Summary Judgment filed by the Kootenai County Defendants, namely, Kootenai County Sheriff's Department, Rocky Watson, Alana Hunt, Amber Egan, Kenneth Hamley, Paul Hast, and Dennis Arnds. (Docket No. 41.) This action was the result of Plaintiff missing the deadline for filing a response after having been given various extensions of time. After conditionally granting the Motion, the Court gave Plaintiff an additional period of time to respond. Plaintiff has filed his Response, and Defendants have filed their Reply. (Docket Nos. 71 & 75.) The Court now reviews the parties' arguments to determine whether the conditional grant of summary judgment should be made final.

**A.     Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**MEMORANDUM DECISION AND ORDER  2**

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record which demonstrate that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv., Inc.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv*., 809 F.2d at 630-31 (internal citation omitted). Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury

could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Here, Plaintiff brings claims under the Fourth and Eighth Amendments.

**B.     Background**

Plaintiff alleges that, on April 6, 2003, during his stay at the Red Lion Inn in Post Falls, Idaho, government agents used excessive force in arresting him and thereafter failed to provide proper medical care for his injuries. He was eventually diagnosed with a spinal cord injury. He alleges that he now has 80% paralysis in the lower body and suffers from a loss of urinary and bowel control.

**C.     Excessive Force Claim: Defendants Not Present at Arrest**

A § 1983 claim may be based upon the Fourth Amendment when police use excessive force during arrest procedures. *See Robins v. Harum*, 773 F.2d 1004 (9th Cir. 1985). Defendant Officers Amber Eagan, Kenneth Hamley, Paul Hast, and Dennis Arnds allege that they were not present at the time of Plaintiff's arrest and detention, and, therefore, Plaintiff cannot prove a causal link between these Defendants and the excessive force incident. (*Defendants' Statement of Material Facts*, ¶ 2, Docket No. 41-3; *Affidavit of Dan Soumas*, ¶ 5, Docket Nos. 41-3 & 41-5.) Plaintiff agrees. (*Response*, p. 1, Docket No. 71.) As a result, summary judgment in favor of these Defendants on the excessive force claim is

**MEMORANDUM DECISION AND ORDER  4**

granted.

Defendant Alana Hunt alleges that she was not physically present in the hotel room when Plaintiff was arrested, but that she was posted at the front desk in the reception area of the hotel until after Plaintiff was removed from the room by other officers. She offers her investigative report as evidence of her post for that evening. (*Defendants' Statement of Material Facts*, ¶ 3; *Affidavit of Alana Hunt*, ¶¶ 1-8, Docket Nos. 41-3 & 41-4.) Plaintiff has brought forward no evidence to refute this allegation. As a result, summary judgment in favor of Defendant Hunt on the excessive force claim is granted.

**D.     Failure to Provide Medical Care**

Plaintiff alleges that after he was treated at the emergency room for his injuries, the Kootenai County Sheriff's Department, Sheriff Rocky Watson, Deputy Egan, Deputy Hamely, Deputy Hast, and Deputy Arnds failed to provide proper medical care at the jail.

1.     <u>Standard of Law</u>

A pretrial detainee's challenge to the conditions of his confinement is properly brought under the Fourteenth Amendment. *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir.) (en banc), *cert. denied*, 502 U.S. 1074 (1991). Nevertheless, the Eighth Amendment provides a minimum standard of care for such challenges brought by a pretrial detainee. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).

**MEMORANDUM DECISION AND ORDER  5**

To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Mere indifference, medical malpractice, or negligence will not support a cause of

**MEMORANDUM DECISION AND ORDER** 6

action under the Eighth Amendment.  *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980).  A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).  If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial.  *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

   2.   Facts

After arrest and prior to being booked at the Kootenai County Jail, Plaintiff was examined and treated at the Kootenai County Medical Center.  (*Soumas Affidavit*, Exhibit O.)  Plaintiff's x-rays of the left hip, shoulder, ribs, and fifth finger were "negative other than an acute middle phalangeal fracture," which was splinted by the doctor.  (*Id.*, Exhibit P.)  The emergency room physician diagnosed Plaintiff as having a left finger fracture, contusions of the left hip, shoulder, and ribs, and heroin dependency.  (*Id.*, Exhibit P.)  The treatment plan was to follow up with a physician "this week" regarding his finger, and to "[i]ce the local area, rest, and return here as needed."  (*Id.*)  The emergency room doctor did not prescribe any medication despite Plaintiff's request for methadone and pain killers.  (*Id.*, Exhibit O.)

**MEMORANDUM DECISION AND ORDER  7**

At his booking on April 7, 2003, Plaintiff's ailments were noted on the Inmate Medical Assessment, including his heroin dependency and withdrawal. (*Id.*, Exhibit Q.) Plaintiff was housed in the medical unit and placed on fifteen-minute medical watch, which meant that jail staff were to check on him every fifteen minutes for the duration of his confinement in that unit. (*Id.*, Exhibits C, G, H, I, J, L, M & Q.)

On April 9, 2003,[1] Plaintiff completed an Inmate Request Form (Kite) stating that he needed medication for his broken finger and his shoulder. He also indicated that he had diarrhea from heroin withdrawal and asked about a three-week methadone program. (*Id.*, Exhibit D.) The Kite was received on April 9, and answered: "[W]e do not have a methadone program. You will be given Ibupofen and kaopectate." (*Id.*) On the same date, Plaintiff completed another Kite complaining of "terrible back pain," and including the same requests as in the first Kite. The answer was "See first Kite." (*Id.*, Exhibit E.) Also on the same date, Plaintiff completed a third Kite asking for his glasses and to be placed on Acetaminophen. The answer of 4-10-03 was "You have been written for Tylenol [Acetaminophen]. Ibuprofen was discontinued." (*Id.*, Exhibit F.)

On April 13, 2003, Plaintiff defecated on his mattress and blanket, and deputies sanitized his cell and indicated in the daily notes that Plaintiff "is going through heroin withdrawals." (*Id.*, Exhibit R.)

---

[1] The Kite is dated "3-7," but received and answered on 4-9; Plaintiff does not contest Defendants' statement that the Kites were written and given to medical staff on 4-9, two days after Plaintiff's booking.

**MEMORANDUM DECISION AND ORDER  8**

Plaintiff alleges that jail staff laughed at him several times when he had to crawl to the bathroom on his hands and knees, and offered no assistance. (*Response*, Docket No. 71.) During this time period, Plaintiff was also observed walking in a shuffling fashion. (*Soumas Affidavit*, Exhibit N.)  Plaintiff alleges that when he complained to jail staff and the on-duty nurse about his increasing problems, they chided him for faking in order to get drugs administered to him. (*Amended Complaint*, p. 7, Docket No. 23.)

On April 14, 2003, Plaintiff wrote a Kite, stating, "I need to see a doctor please[.] My right leg is useless and my bladder is hard from not urinating in 6 days."[2] The answer of the same date was "You have been placed on the doctor list for review." *(Soumas Affidavit*, Exhibit K.) It is unknown whether any medical personnel at the jail responded to Plaintiff's requests in person to determine whether Plaintiff's symptoms constituted an emergency.  In addition, the Court notes that the emergency room physician's written instruction that Plaintiff receive a follow-up visit for his broken finger within a week was ignored.

On April 16, 2003, Plaintiff saw Dr. Kennedy, who ordered that Plaintiff be taken to the hospital emergency room. (*Id*., Exhibit N.) The Kootenai County Medical Center staff had to use a catheter to empty Plaintiff's bladder and performed an MRI, which showed hemorrhaging around his lower back and spine. (*Complaint*, pp. 4-5, Docket No. 3.)  They then flew Plaintiff to Harbor View Medical Center in Seattle. (*Soumas Affidavit*, Exhibit S.)

---

[2] While Plaintiff alleges that he had not been able to urinate during the entire time he was incarcerated at the jail and had reported this to jail staff and nurses, this is the first written notice of the problem.

**MEMORANDUM DECISION AND ORDER 9**

Plaintiff alleges that he suffered a ruptured disc between his shoulders that ultimately rendered him 80% paralyzed from the middle of his back to his feet. He states that he remained hospitalized for three months. (*Response*, Docket No. 71.)

     3.    <u>Discussion</u>

When medical personnel are involved in care of an inmate, "prison officials are entitled to rely on the opinions, judgment, and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for an inmate." *Wynn v. Mundo*, 367 F.Supp. 2d 832, 337-38 (D. N.C. 2005). On the other hand, if an inmate continues to complain after he has had a medical examination, officers who ignore the continuing complaints may be deliberately indifferent. *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987).

Here, Plaintiff cites several conditions that would cause a layperson to question whether a serious condition was present, including terrible back pain, inability to urinate, and inability to walk. *See McGuckin v. Smith,* 974 F.2d at 1059-60 (a "serious medical need" includes "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"). It is unclear which Defendants, if any, may have had notice of these symptoms between April 7 and April 16. Plaintiff's condition had definitely worsened by April 14, and yet he was told only that a doctor would see him on April 16.

**MEMORANDUM DECISION AND ORDER 10**

In *Sams v. Prison Health Services, Inc.*, 2007 WL 788365 (D. Fla. 2007), where the defendants had allegedly ignored Plaintiff's deteriorating health condition, the Court noted that deliberate indifference extended to such circumstances:

> Courts have consistently held that the knowledge of the need for medical care and the intentional refusal to provide that care surpasses mere negligence and constitutes deliberate indifference. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (citations omitted). Deliberate indifference to a serious medical need exists when prison officials prevent an inmate from receiving recommended treatment or when they deny access to medical personnel capable of evaluating the inmate's need for treatment.

*Id.*, at *3.

The Court concludes that it is appropriate to deny summary judgment without prejudice on the medical deliberate indifference claim and qualified immunity defense. Plaintiff should be given an opportunity to conduct discovery to determine the extent to which the non-medical jail staff and on-duty nurses knew of Plaintiff's complaints of terrible back pain, inability to urinate, and inability to walk. Presently, Plaintiff has not linked any particular Defendant to any particular action or inaction. Plaintiff has named, but has not served, a defendant he has called "One Unknown Nurse" in his First Amended Complaint. (Docket No. 23.) The Court will provide Plaintiff with an additional opportunity to name and serve the appropriate Defendants related to the medical care issues. Defendants may renew their summary judgment motion at a later date, or Plaintiff may file a notice of voluntary dismissal of some of his claims, if Plaintiff has been unable to show that each of them had personal knowledge of his medical condition.

**MEMORANDUM DECISION AND ORDER 11**

**E.     Municipal Liability**

The law is clear that a local governmental entity may not be sued except where it is alleged that the execution of a government's policy or custom inflicted the injury of which Plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). That is, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). There is no respondeat superior liability under § 1983. *Id.* Requisite elements of a § 1983 claim against a municipality are the following: (1) the plaintiff was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996) (internal quotation marks omitted)).

Plaintiff argues that Defendant Kootenai County Sheriff's Department did not investigate the use of force in his incident, even though it had a written policy of reporting and investigating officer misconduct incidents:

> The Unit members will conduct themselves as professional police officers and will adhere to all Department policies concerning personal conduct in the performance of their duties. Serious acts of misconduct or failure to adhere to policies will be reported to the Project Director by the Unit Supervisor or any other Unit member. The Project Director shall advise the respective department's command personnel for the appropriate action to be taken. Any Unit Member who is determined to have been involved in serious acts of misconduct or commits serious violations of policies will be subject to immediate removal from the Unit. All matters involving personnel complaints

**MEMORANDUM DECISION AND ORDER  12**

will be referred to the Unit member's respective department.

(*Soumas Affidavit*, Exhibit U.) This policy and the lack of an investigation into his incident, Plaintiff argues, shows that the Sheriff's Department had a policy of using or condoning excessive force. While the "routine failure" to follow a written policy can itself be deemed a policy,[3] here, Plaintiff has not shown that the Department "routinely" failed to investigate alleged excessive force incidents. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

The Court agrees with Defendant Kootenai County Sheriff's Department that Plaintiff has failed to come forward with any evidence showing that a policy was the moving force behind either the alleged excessive force incident or the alleged lack of medical care. As a result, Defendant Kootenai County Sheriff's Department is entitled to summary judgment.

## PLAINTIFF'S FILINGS AND MOTIONS

**A.     Plaintiff's Legal Files and Inmate Legal Assistant (Docket Nos. 68 & 70)**

Plaintiff requests that the Court aid him in retrieving his legal file from federal prison officials. However, Plaintiff has not shown that he has followed the prison grievance procedures to obtain his legal file. The Court has also provided a means for Plaintiff's file

---

[3] *See Redman v. County of San Diego*, 942 F.2d 1435, 1445 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER  13**

to be recreated by the efforts of all counsel to this action, if necessary, as explained below. For these reasons, his Motion is denied.

Plaintiff also requests that the Court order the prison to allow him to communicate with his former inmate legal assistant, who was transferred to a different prison. The Supreme Court has cautioned the federal courts not to interfere with the day-to-day operations of the prisons, especially those things related to security, a task which is best left to prison officials who have particular experience in dealing with prisons and prisoners. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (First Amendment claims). Therefore, Plaintiff's Motion is denied.

The Court also notes that Plaintiff has attempted to file a notice of power of attorney as to an inmate legal assistant. That is likely not permitted by prison regulation, and it is not permitted by the courts. Only a licensed attorney in good standing can represent another party in federal court. The issue is moot because the Court has determined that appointment of counsel is appropriate in this case.

**B.     Other Motions and Appointment of Counsel**

Because Plaintiff's case poses genuine issues of material fact, discovery is necessary, and Plaintiff is having great difficulty litigating this case from an out-of-state prison, the Court now reconsiders and grants Plaintiff's Motion for Appointment of Counsel and his request to stay this case pending Plaintiff's receipt of his legal files which were taken from him by federal prison officials during his transfer. (Docket No. 65.)

**MEMORANDUM DECISION AND ORDER  14**

The Court finds it appropriate to stay this case for several weeks or months while it conducts a search for pro bono counsel for Plaintiff. During this time period, Plaintiff shall take all steps within the prison grievance system to attempt to retrieve his legal files. During this time period, the Court will administratively terminate this case for internal administrative purposes only. The parties shall not file additional motions during this time period. The Court will re-open the case when counsel has been appointed.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Kootenai County Defendants' Motion for Summary Judgment (Docket No. 41) is GRANTED in part and DENIED in part as follows: Plaintiff's excessive force claims against Defendants Rocky Watson, Amber Eagan, Kenneth Hamley, Paul Hast, Dennis Arnds, Alana Hunt, and the Kootenai County Sheriff's Department are DISMISSED with prejudice. Plaintiff's Eighth Amendment medical claims against these Defendants remain.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Appointment of Counsel and a Stay (Docket No. 65) is GRANTED. This case is STAYED pending appointment of counsel for Plaintiff. In the interim, Plaintiff shall take all steps within the prison grievance system to attempt to retrieve his legal files. The Clerk of Court shall administratively terminate this case for internal administrative purposes only during the stay. The parties shall not file additional motions during this time period. The Court will re-open the case when counsel has been appointed.

**MEMORANDUM DECISION AND ORDER 15**

IT IS FURTHER HEREBY ORDERED:

A.  Counsel for Defendants and counsel for Plaintiffs shall complete all Rule 26 disclosures to one another within sixty (60) days after counsel has been appointed. Counsel for Defendants shall cooperate to provide Plaintiff's new counsel with a duplicate set of items already provided to Plaintiff if Plaintiff is unable to retrieve his file from the federal prison.

B.  The Court will permit Plaintiff to file a notice of the true names of any remaining unnamed defendants and provide service addresses no later than one hundred twenty (120) days after counsel is appointed.

C.  Within one hundred twenty (120) days after Plaintiff's counsel is appointed, counsel shall provide an address for the following Defendants or claims against them shall be dismissed: Craig Campbell, Rich Lyon, Andy Boyle, Darren Morgan, and Don Ashenbrenner., J.M. Young, One Unknown FBI Agent, and One Unknown DEA Agent.

D.   All counsel shall confer and submit a proposed schedule for any discovery remaining and for the filing of dispositive motions; the proposed schedule shall be filed no later than one hundred twenty (120) days after counsel has been appointed.

**MEMORANDUM DECISION AND ORDER  16**

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Order Directing Prison Officials to Produce Plaintiff's Case File (Docket No. 68) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Order Directing Prison Officials to Allow Plaintiff to Communicate with Inmate Legal Assistant (Docket No. 70) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Request for Service (Docket No. 73) is GRANTED in part and DENIED in part. The Clerk of Court shall direct the United States Marshal Service to personally serve Dan Soumas at the Kootenai County Sheriff's Department, 5500 North Government Way, Coeur d'Alene, Idaho. The United States Marshal Service has previously attempted to serve the Missouri River Task Force and has determined that it is not a legal entity and that no agents are authorized to accept service on its behalf. Therefore, claims against the "Missouri River Task Force" are DISMISSED.

DATED: **October 16, 2008**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER 17**